WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elaina Kay Moza, | No. CV 10-0678-TUC-BPV |
| Plaintiff, | **ORDER** |
| v. | |
| Michael J. Astrue, Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff, Elaina Kay Moza, suffers from the impairments of bipolar disorder, borderline personality disorder, history of alcohol dependence (in remission), bulimia, and degenerative disc disease of the cervical spine. Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on April 25, 2007, alleging disability since May 15, 2006 due to a mental condition and arthritis in her neck. Administrative Transcript (Tr.) 95-111, 114-124. The application was denied initially, (Tr. 55-56, 59-62), on reconsideration (Tr. 57-58, 65-71), and after an administrative hearing before an Administrative Law Judge (ALJ) held on January 8, 2009 (Tr. 15-25). This decision became the final decision for purposes of judicial review under 42 U.S.C. § 405(g) when the Appeals Council denied review. Tr. 1-4.

Plaintiff now brings this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). The United States Magistrate Judge has received the written consent of both parties, and, accordingly, presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73.

After considering the record before the Court and the parties' briefing of the issues, the Court will reverse Defendant's decision and remand for an immediate award of benefits.

## I.    STANDARD OF REVIEW

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court will set aside a denial of benefits only if the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982), *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir, 1982)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "'Substantial evidence' means 'more than a scintilla,' but 'less than a preponderance.'" *Smolen*, 80 F.3d at 1279

(quoting *Perales*, 402 U.S. at 401 and *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)) (internal citations omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009);*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

## II.   DISCUSSION

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) she has not worked since the alleged disability onset date, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity (RFC) precludes her from performing her past work. At step five, the Commissioner must show that the claimant is able to perform other work. See 20 C.F.R. §§ 404.1520, 416.920.

In her decision, the ALJ found Plaintiff had not engaged in substantial gainful activity from May 15, 2006, the alleged onset date. Tr. 17. At step two, the ALJ found Plaintiff had bipolar disorder; borderline personality disorder; bulimia; history of alcohol dependence, in remission; and degenerative disc disease of the cervical spine, impairments that were "severe" pursuant to the regulations. Tr. 17. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 17-18.

The ALJ found Plaintiff had the residual functional capacity to perform work as follows:

> to occasionally lift and/or carry 50 pounds and frequently 25 pounds; stand and/or walk 2 hours at a time, for 6 hours total per day; sit 2 hours at a time, for a total of 6 hours a day; with postural limitations of no climbing ladders,

>ropes or scaffolds and occasionally climbing ramps or stairs. The claimant also has mental limitations with the ability to understand and remember simple instructions with ability to remember detailed instructions and work at a consistent pace, particularly if it involved simple repetitive tasks.

Tr. 18-23. At step four, the ALJ found Plaintiff was unable to perform any of her past relevant work as a certified nurse's assistant. Tr. 23. At step five, relying on vocational expert testimony, the ALJ found Plaintiff could perform other work existing in significant numbers in the national economy. Tr. 24. Therefore, the ALJ found Plaintiff was not disabled at any time from May 15, 2006 through the date of her decision. Tr. 24-25.

Plaintiff argues that the ALJ erred 1) by purporting to rely on the assessment of an examining psychologist, Carl Mansfield, Ph.D., when in fact the vocational expert testified that the limitations assessed by Dr. Mansfield would preclude sustained work activity; 2) by purporting to rely on the opinion of a state agency psychologist who completed assessment forms at the initial determination level but did not examine Plaintiff; and 3) by rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons for doing so. Plaintiff contends that the Court should exercise its discretion to remand for a determination of disability benefits.

The Commissioner concedes that the ALJ committed reversible error in her evaluation of Dr. Mansfield's opinion. Regarding the ALJ's credibility determination the Commissioner contends that "clear and convincing" is not the appropriate standard of review. The Commissioner did not address Plaintiff's second point of error, namely, that the opinion of a non-examining reviewer, standing alone, cannot serve as substantial evidence to support a decision to deny benefits. Finally, as to all claims of error, the

Commissioner contends that the Court should not "credit-as-true" any evidence, and that the proper disposition of this case is to remand for further proceedings.

A. <u>Dr. Mansfield's Opinion</u>

Dr. Mansfield reviewed Plaintiff's psychiatric progress notes from Value Options and performed a consultative psychological examination on behalf of the agency. Tr. 209-11. Dr. Mansfield diagnosed depressive disorder, moderate, and kleptomania. Tr. 211. Dr. Mansfield concluded that medical records indicated a history of bipolar disorder, and that Plaintiff indicated that Value Options had declared her seriously mentally ill (SMI). Tr. 211. Dr. Mansfield further concluded that Plaintiff's emotional state and mild memory impairment would likely impact her ability to understand and carry out job instructions and respond appropriately to supervision and pressures in a work setting. Tr. 211.

Dr. Mansfield completed a "Medical Source Statement of Ability to do Work Related Activities (Mental)," and noted that Plaintiff had mild limitations[1] in the ability to remember locations and work-like procedures; understand, remember and carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and make simple work related decisions. Tr. 204-07. Dr.

---

[1] In each of these categories, the checkmark was placed on the line signifying "Not significantly limited (good/mild limitations)" but Dr. Mansfield had also underlined the word mild. In one category, the ability to ask simple questions or request assistance, Dr. Mansfield simply placed a checkmark on the line signifying "Not significantly limited (good/mild limitations)," without underlining either word. Tr. 204-07

- 5 -

Mansfield indicated that Plaintiff suffered moderate limitations (either fair or limited, but nor precluded) in the ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavior extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness[2]; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. Tr. 204-07.

At the hearing, the vocational expert (VE) responded to a hypothetical question based on Dr. Mansfield's assessment, assuming an individual with all of the moderate limitations as described above. Tr. 51-52. The term "moderate limitation" in the hypothetical was defined the same as it had been defined in the Medical Source Statement completed by Dr. Mansfield as "fairly limited, but not precluded." Tr. 51. The VE responded "I believe that combination of impairments would preclude past work or any work." Tr. 52.

The ALJ reviewed the record of mental impairments and accepted the conclusions of Dr. Mansfield, summarizing both the mild and moderate limitations that Dr. Mansfield

---

[2] In this category, Dr. Mansfield had underlined the words "standards of neatness." Tr. 207.

- 6 -

noted in the Medical Source Statement. Tr. 20. After listing all the limitations, however, the ALJ stated: "With that, it was concluded the claimant could perform the mental demands of simple repetitive work tasks, a conclusion which is consistent with the above reported findings as well as the reported daily functioning." Tr. 20. This statement did not encompass the entirety of the assessment and limitations reported by Dr. Mansfield.

Plaintiff argues that the ALJ's implicit rejection of Dr. Mansfield's uncontradicted opinion was in error. The Commissioner concedes that the ALJ's evaluation of Dr. Mansfield's opinion was "flawed," that a review of Dr. Mansfield's opinion and accompanying report reveals no such conclusion as stated by the ALJ. Nonetheless, the Commissioner argues that the record contains evidence supporting the ALJ's determination that Plaintiff could perform simple, repetitive work. The Commissioner further argues that the use of "moderate" limitations, *i.e.* a general "summary conclusion" category, is not appropriate for inclusion in the residual functional capacity, or, any underlying hypothetical question proffered to the vocational expert.

The Commissioner argues, in reliance on the authority of its Program Operations Manual System (POMS), that "general terms or severity ratings (like moderate) should not be used because they 'do not describe function and do not usefully convey the extent of capacity limitations.'" (Doc. 27, at 9)(citing POMS DI 24510.065.B.1, 2001 WL 1933372).[3] As noted by Plaintiff, however, the term "moderate" was defined, both in the

---

[3] The Commissioner argues that "Dr. Barrons was the only mental health professional who translated the more general severity ratings into specific mental functional abilities, and her conclusion regarding Plaintiff's mental residual functional capacity was consistent with the ALJ's conclusion that Plaintiff could perform simple,

"Medical Source Statement of Ability to do Work Related Activities (Mental),"[4] (Tr. 204-07) and in the ALJ's hypothetical to the VE, as fairly limited, but not precluded Tr. 51. Moreover, the Medical Source Statement described several sub-categories within four broad functional areas: 1) understanding, carrying out, and remembering; 2) sustained concentration and persistence; 3) social interaction; 4) and adaptation. Tr. 204-07. These

---

repetitive work." (Doc. 27, at 9) This argument is misleading at best. As Plaintiff notes, the POM directive, DI 24510.065 specifically applies to state agency reviewers, such as Heather Barrons, Psy. D., and provides instructions to such reviewers for writing the "formal narrative mental RFC assessment" for each of four subsections A through D: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. (DI 24510.065) Specifically, the reviewer is instructed to discuss the functions that the individual has demonstrated that she "**can do**, as well as any **limitations** of those functions." (*Id*.)(emphasis in original) Dr. Barrons identified several areas in which Moza was "not significantly limited" and five areas in which Moza was "moderately limited" under the summary conclusion portion of the form, nearly identical to Dr. Mansfield's assessment. Tr. 217-18. In the narrative portion of the form, however, which the Commissioner now argues is the *crucial* portion of the form, translating the more general severity ratings into a specific mental RFC, Dr. Barrons curiously identifies **no functional limitations** whatsoever, completely disregarding the five areas in which she previously noted Moza was moderately limited. Dr. Barrons summarized what she referred to as the "data," and simply restated, in narrative form, the areas in which Moza was "not significantly limited" (there was a separate box for "no evidence of limitation in this category") as a "fair to good" "ability" to perform certain activities and simply failed to state *any* of Plaintiff's limitations. For example, where Dr. Barrons checked the box indicating Moza was not significantly limited in her ability to remember locations and work-like procedures, the narrative describes this as: "Data suggests that the CLMT is able to remember basic workplace locations and procedures." Where Dr. Barrons checked the box indicating Moza was "moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," this moderate limitation was completely disregarded in the narrative portion of the form. Though a fine example of cherry-picking, a review of Dr. Barron's RFC assessment suggests that it is not more useful or a "more specific" or a "more concrete" explanation of limitations than Dr. Mansfield's Medical Source Statement.

[4] The Court questions the implications of Commissioner's actions, if as stated by Plaintiff, it provides this assessment form to its own examiner, only to argue in this appeal that the form should not be used to assess a claimant's work capacities. The Court further questions whether the Commissioner regularly relies on a form it deems deficient to assess a claimant's work capacities in its regular assessment of work capacity.

twenty different sub-categories within the broad functional areas combined with the definitions provided for each accurately described Plaintiff's limitations.[5]

The Commissioner argues that this case is analogous to *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008). In *Stubbs–Danielson*, the Ninth Circuit Court of Appeals held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id*. at 1174. There, the record contained some evidence of the claimant's slow pace, but the only concrete functional limitation provided by the medical sources was that the claimant could perform "simple tasks." *Id*. at 1173–74. As a result, the ALJ formulated a RFC that limited the claimant to "simple, routine, repetitive sedentary work." *Id*. at 1173. The Court of Appeals concluded that the ALJ did not err in that formulation of the RFC and, as a result, did not err in formulating hypothetical questions to the vocational expert.

This case is more analogous to *Brink v. Comm'r. of Soc. Sec. Admin.*, 343 Fed.Appx. 211 (9th Cir. 2009), which distinguished *Stubbs–Danielson*. Although *Brink* is an unpublished decision and thus only of persuasive value, it is instructive in regards to

---

[5] Furthermore, if the ALJ felt these records were inadequate or too ambiguous for the ALJ to employ in formulating Plaintiff's RFC, it was incumbent upon the ALJ's to develop the record further, even when Plaintiff is represented by counsel. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ has a duty to develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.). There is a heightened duty where the claimant is suffering from a mental condition because mental claimants may not be able to protect themselves from loss of benefits by producing evidence. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). An ALJ's duty to develop the record is further triggered when there is ambiguous evidence or when "the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 at 459-60; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty may require that the ALJ obtain additional information by, *inter alia*, contacting treating physicians, scheduling consultative examinations, or calling a medical expert. 20 C.F.R. §§ 416.912(e)-(f), 416.919a.

how it distinguished *Stubbs–Danielson*. In finding error and rejecting the Commissioner's argument premised on *Stubbs–Danielson*, the Court of Appeals reasoned:

> In *Stubbs–Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), we held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." *Id*. at 1174. The medical testimony in *Stubbs–Danielson*, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace. *Stubbs–Danielson*, therefore, is inapposite.

*Id*. The undersigned finds that the reasoning of *Brink* is persuasive and supports a conclusion that *Stubbs–Danielson* does not control this case. *See also Betancourt v. Astrue*, 2010 WL 4916604, at *3–4 (C.D.Cal. Nov.27, 2010) (where the ALJ accepted medical evidence of plaintiff's limitations in maintaining concentration, persistence, or pace, a hypothetical question to the VE including plaintiff's restriction to "simple, repetitive work" but excluding plaintiff's difficulties with concentration, persistence, or pace resulted in a VE's conclusion that was "based on an incomplete hypothetical question and unsupported by substantial evidence."); *Melton v. Astrue*, 2010 WL 3853195, at *8 (D.Or. 2010), *aff'd.*, 442 Fed.Appx. 339 (9th Cir. 2011) (ALJ erred in her assessment of plaintiff's RFC where the assessment included plaintiff's restriction to simple, repetitive tasks, but did not include plaintiff's mild-to-moderate limitations in maintaining concentration, persistence, or pace). In this case, as in *Brink*, the ALJ accepted evidence of plaintiff's moderate limitations with sustained concentration and persistence, but the RFC only included a reference to "the ability to understand and remember simple instructions with ability to remember detailed instructions and work at

- 10 -

a consistent pace, particularly if it involved simple repetitive tasks." That RFC is materially incomplete in light of the evidence in the record and the ALJ's own findings.

Because the ALJ did not reject Dr. Mansfield's opinion, it was error not to include these limitations in the residual functional capacity, as they do describe function and convey the extent of Plaintiff's mental functional capacity.

Next, the Commissioner argues that although the ALJ misstated Dr. Mansfield's opinion, there is ample evidence in the record to support the ALJ's conclusion that Plaintiff could perform simple, repetitive work. The Commissioner points to other medical evidence in the record, as well as Moza's activities of daily living to support this argument.

As Plaintiff correctly notes, however, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995); *see also Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1202 (9th Cir. 2008). Thus, the Commissioner's reliance on Dr. Barron's opinion is misplaced.

Thus, this issue boils down to application of the "credit-as-true" rule to the facts of this case. The Commissioner submits that Dr. Mansfield's own opinion is not necessarily inconsistent with the ALJ's conclusion that Plaintiff could perform simple, repetitive work. (Doc. 27, at 6) The Commissioner further argues that, because there is record evidence to support the ALJ's conclusion as to Plaintiff's mental RFC, and further proceedings would allow the ALJ to pose only proper hypotheticals, remand for further proceedings, and not outright reversal, is the appropriate remedy. (Doc. 27, at 11)

Plaintiff submits that because Dr. Mansfield's assessment was uncontradicted substantial evidence regarding Moza's limitations, and because the vocational expert testified without contestation that those limitations precluded the ability to work, this matter should be remanded for determination of benefits based on evidence from the agency's own examining psychologist and vocational expert. (Doc. 16, at 22)

The decision to remand for further development of the record or for an award of benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000). This Circuit has held that an action should be remanded for an award of benefits where the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. *See, e.g., Varney v. Sec'y of HHS*, 859 F.2d 1396, 1400 (9th Cir. 1988) (*Varney II*).

The Commissioner asserts that remand for further proceedings is appropriate, because it would allow the ALJ to properly address Dr. Mansfield's opinion, obtain additional evidence concerning mental health listings, and more thoroughly address Plaintiff's credibility, whereas Plaintiff's argument would have the Court improperly serve as finder of fact.

After applying the credit-as-true rule to improperly discredited evidence, however, no outstanding issue remains to be resolved before determining that Plaintiff is entitled to benefits. The impartial vocational expert testified that the mental limitations assessed by Dr. Mansfield, if adopted, would preclude past work or any work. Tr. 51-52. Because it is

clear that the ALJ would be required to find Plaintiff disabled, *see Benecke v. Barnhart*, 379 F.3d 587, 593-95 (9th Cir. 2004), the Court will remand the case for an award of benefits. *See Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007) (remanding for an award of benefits where it was "'clear from the record that the ALJ would be required to determine the claimant disabled'") (citation omitted). Given this ruling, the Court need not address Plaintiff's arguments that the ALJ failed to properly evaluate her credibility and erred in adopting the assessment of the non-examining doctor.

The Commissioner takes the position that the "credit-as-true" rule is inconsistent with the Social Security Act and with other Ninth Circuit actions, citing the dissent in *Vasquez v. Astrue*, 572 F.3d 586 (9th Cir. 2009)(O'Scannlain, J., dissenting). Even Judge O'Scannlain in the dissenting opinion acknowledges, however, that the current state of the law which this Court is bound by is that:

> "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" [*Lester*, 81 F.3d] at 834; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.2000) (same); *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir.2007) ( "Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true."). *Lester*, *Harman*, and *Benecke* courts did not require any other conditions to be fulfilled before the court credited testimony as true. Rather, the *Harman* and *Benecke* courts followed the bright-line rule first set forth in *Lester*: that testimony which was improperly rejected will be credited as true as a matter of law.

*Vasquez*, 572 F.3d at 603-04 (dissent). This Circuit has clearly held that an action should be remanded for an award of benefits where, as here, the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the

record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. *See, e.g., Varney II*, 859 F.2d at 1400; *see also Benecke*, 379 F.3d at 593 (citing *Harman*, 211 F.3d at 1178).

The parties concede that the ALJ failed to provide legally sufficient reasons for not considering and therefore by implication, improperly rejecting Dr. Mansfield's opinion. No outstanding issue remains to be resolved before determining that Plaintiff is entitled to benefits. The impartial vocational expert testified that application of Dr. Mansfield's opinion with regard to Plaintiff's mental impairments would result in the conclusion that such a person would be unable to perform Plaintiff's past work or any work. Tr. 51-52. The Commissioner did not object to this factual finding. Because it is clear that the ALJ would be required to find Plaintiff disabled, the Court will remand the case for an award of benefits. *See Benecke*, 379 F.3d at 593-95 (remanding for an award of benefits where no outstanding issues remain and ALJ would be required to find claimant disabled if evidence is credited); *Regennitter v. Comm'r of Soc.Sec.Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999)(where the court "conclude[s] that...a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits."); *Lester,* 81 F.3d at 834 (remanding for payment of benefits because, after crediting doctor's opinion as true, *inter alia*, "the evidence...demonstrates that..." the plaintiff was disabled.); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990) (remanding for payment of benefits where the Secretary did not provide adequate reasons for disregarding examining physician's opinion); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)(same).

Plaintiff applied for disability benefits more than five years ago. She has been denied at the initial, reconsideration, hearing, and appellate levels of review. Plaintiff specifically raised these same issues of error regarding Plaintiff's mental limitations as assessed by Dr. Mansfield and adopted by the ALJ in a memorandum to the Appeals Council (Tr. 185-88-53), at which stage the Appeals Council could have remanded for a further hearing so that the ALJ could take further evidence or remand for a further hearing, yet the Appeals Council declined that opportunity. All three factors that the Court must consider support Plaintiff's request to remand the matter for an award of benefits. *Benecke*, 379 F.3d at 595 (recognizing that "[r]emanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" (quoting *Varney II*, 859 F.2d at 1398). A remand for further proceedings is not warranted.

IT IS ORDERED:

1. Defendant's decision denying benefits is reversed.

2. The case is remanded to Defendant for an award of benefits.

3. The Clerk is directed to enter judgment accordingly.

Dated this 21st day of May, 2012.

*Bernardo P. Velasco*
Bernardo P. Velasco
United States Magistrate Judge